Samuel D. Jackson, Esq.
15 Lexington Road
Somerset, NJ 08873
Telephone:    (908) 543-4456
Fax:    (908) 543-3534
Email:    AttorneySamuelJackson@gmail.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Supportive Health, LLC, | : | Case No. 21-15113 (VFP) |
| | : | |
| | : | Honorable Vincent F. Papalia |
| Debtor. | : | |

**CERTIFICATION OF SAMUEL D. JACKSON, ESQ.**

I, Samuel D. Jackson, Esq., do hereby certify as follows:

1. I am an attorney licensed to practice law in the State of New Jersey and the United States District Court for the District of New Jersey. Prior to today, and during all of the events described below, I was working as a self-employed, solo attorney.

2. To find work in this capacity, I would browse the legal sections of www.craigslist.com from time to time. On August 1, 2021, I responded by email to an advertisement that had been posted on July 23, 2021, to the North Jersey legal/paralegal jobs section with the title, "Law firm seeks NJ Attorney for Appearances (Newark, NJ)," found at the following URL: https://newjersey.craigslist.org/lgl/d/newark-law-firm-seeks-nj-attorney-for/7353090711.html. The text of the advertisement said, "Law firm seeks NJ licensed attorney for appearances (Zoom court hearings)."

3. Shortly after I responded to the advertisement, I received a phone call from a man who identified himself as "John," and held himself out to be an employee of Lento Law Group, P.C. I looked at the attorney page of Lento Law Group and saw that an attorney by the name of John did work there. He explained to me that Lento Law needed a per diem attorney to cover a couple of appearances in this case (the §341 hearing and the status conference) because the attorney of record was too busy to handle them.

4. Throughout our interactions, "John" used the email address lentogroupfile@gmail.com to communicate with me. He told me that due to a server issue, the email address the firm used to file the case, accounting@lentolawgroup.com, was having problems and could not receive

emails. He also told me that he was able to get the court to change the CM/ECF email notification address in this case to lentogroupfile@gmail.com for the same reason.

5. After becoming suspicious, I began to research "John" online. I discovered that his real name is Perrault Jean-Paul, AKA Jean-Paul Perrault. Further research revealed that he was not an attorney associated with Lento Law Group, or even an attorney at all, as far as I could find. Instead, he was the former owner of the property related to this bankruptcy case (2229 E. Eden Place, St. Francis, WI 53235) — someone he had always referred to in the third person in our discussions. I also discovered that Jean-Paul appeared to maintain an interest in the subject property as well as an association with both Supportive Health, LLC and its principal, Carline Bolivar. According to tax records I found, Jean-Paul has paid the property taxes on the subject property as recently as 2019, while public records indicate Supportive Health, LLC and Carline Bolivar appear to share an address with Jean-Paul, and Jean-Paul was listed the manager of Supportive Health, LLC in the past.

6. At this point, I became very alarmed, because Jean-Paul mentioned that he had been filing documents in the case himself, which meant that he was likely impersonating Joseph Lento, Esq. in federal court and using Mr. Lento's credentials to file documents without Mr. Lento's knowledge or consent.

7. I called Lento Law the next morning to find out whether they were aware of his activity in the case and if they really were experiencing email issues as Jean-Paul claimed. They were not. We determined that the only proper course of action would be to inform the Trustee and this Court, and for Lento Law to move to withdraw from the case.

8. I did not inform Jean-Paul of my discoveries or indicate to him that anything was amiss in our relationship. This morning, before the status conference, I received a text message from Jean-Paul, ordering me to make false representations to this Court. Jean-Paul wrote:

   > 7:10 AM: "Good morning Sam. The trustee will raise issues about the delays in the 341 meeting and communications issues. You will inform them that due to technical difficulties were have been unable to receive emails sent to our primary email address, accounting lentolawgroup.com"

   > 7:10 AM: "To address this issue, we created a new email address and have promptly responded to questions and requests of the trustee"

   > 7:12 AM: "As for the 341 hearing, we did not receive the initial communications due to the email problems. However, we promptly scheduled it with the communicated date of August 11th and then submitted a change when the trustee changed the date without notice to September 1st"

   > Attached as **Exhibit A** is a screenshot of the above text messages Jean-Paul sent to me.

9. Upon information and belief, several of these factual statements that Jean-Paul asked me to make are false:
   a. The implication that the information I was to relay to this Court originated from Lento Law is false.
   b. The statement that the accounting@lentolawgroup.com email address is malfunctioning and cannot receive emails is false.
   c. The statement that the new email address was created to solve that technical problem is false.
   d. The statement that "we" [Lento Law] did not receive the initial communications regarding the §341 meeting is false.
   e. The implication that an employee of Lento Law has been the one communicating with the Trustee is false.

10. Jean-Paul has instructed me to make other false or potentially false statements to this Court:
    a. He instructed me to tell this Court that I had been retained by Lento Law Group, when in fact Lento Law Group was unaware of my involvement before I called them.
    b. He instructed me to tell this Court that I was appearing per diem because the attorney assigned to this case had an unavoidable conflict today, when in fact, Joseph Lento, Esq. appeared this morning.
    c. He instructed me to tell this Court that Carline Bolivar was unaware of the lien at the time the subject property was transferred to Supportive Health; having discovered that they may live together, I now have reason to doubt the truth of that claim.
    d. He instructed me to make the argument that Supportive Health, LLC only owned a single piece of property. I do not know if this is true or not; however, the Trustee's motion alleges that Supportive Health, LLC owns more than one piece of property. (See ¶16 of the Trustee's Motion to Convert Case from Chapter 11 to Chapter 7, filed on August 11, 2021, item #23 on the docket.)

11. In the interest of being fully transparent to this Court, during the course of the discussions about this matter between me and Lento Law, it came to light that I was seeking employment. After interviewing me, Lento Law made me an offer this afternoon, which I accepted.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Samuel D. Jackson, Esq.

Dated:  August 12, 2021