# EXHIBIT A

# OPERATING AGREEMENT

## Supportive Health LLC

This Operating Agreement is made and entered into this 8th day of August, 2008 to be effective by <u>Officers of Supportive Health LLC.</u>

WITNESSETH:

WHEREAS, the parties hereto are desirous of associating themselves as members in a venture known as "Supportive Health LLC.," a limited liability company, formed in the State of NJ NJ; and

WHEREAS, the members desire to reduce to writing the terms of their Operating Agreement;

NOW, THEREFORE, it is agreed by and between the parties that the following sets forth the terms and provisions of the Operating Agreement of Supportive Health LLC. (hereinafter "the company").

## ARTICLE I

NAME AND PRINCIPAL PLACE OF BUSINESS

1.1. The company shall operate under the name of Supportive Health LLC.

1.2. The principal location of the company shall be at 85 Sycamore Rd , Jersey City, NJ .

1.3. The name of the initial registered agent for the company is Global Services. It's address is <u>72 Van Reipen St, #353, Jersey City, NJ 07306</u>. In the event the aforenamed registered agent resigns, has the authority to receive service of process revoked, or cannot be found or served with the exercise of reasonable diligence, the Director of the Division of Companies and Commercial Code of the (name of state) Department of Commerce is appointed agent for service of process.

1.4.  The members of the limited liability company are:
 1.4.1.  Roderick Sanders

1.5.  The managers of the limited liability company are:
 1.5.1.  Roderick Sanders

## ARTICLE II

PURPOSE OF THE BUSINESS

2.1. One purpose and character of the business to be engaged in by the company shall be <u>Healthcare Services</u>

2.2. Additional legal and lawful business ventures and purposes may be added to this limited liability company upon the consent of each and every member of <u>Supportive Health LLC.</u> The operation, scope, and responsibilities of the new business venture(s) shall be fully disclosed to each and every member before voting on consent shall be taken.

## ARTICLE III
### TERM OF THE COMPANY

The company shall commence on the date of acceptance and filing of the Articles of Organization with the State of NJ, Department of Commerce, Division of Companies and Commercial Code, and shall continue indefinitely thereafter unless terminated before that time as described below.

## ARTICLE IV
### FISCAL YEAR OF COMPANY

The fiscal year of the company shall be the calendar year. Any changes to the fiscal year of the company shall be made by vote of each and every member, unless another year is imposed by the Internal Revenue Code or regulations.

## ARTICLE V
### CAPITAL CONTRIBUTIONS

5.1 The original capital of the company shall consist of cash and property contributed by the parties at the values hereinafter set out:

|   |   |   |
|---|---|---|
| 1. Roderick Sanders | cash | $ 25,000 |
| 2. Carline Bolivar | cash | $366,000 |
| 3. | | |
| 4. | | |
| 5. | | |

5.2 After initial contributions, each member may make additional capital contributions from time to time as agreed upon by the members of the company.

## ARTICLE VI
### ADDITIONAL PARTIES

No member shall, except with the consent of each and every member, withdraw his/her capital contributions, in whole or in part, nor assign, mortgage, sell or otherwise transfer his/her membership share in the company or in its capital, assets, or property, nor enter into any agreement as a result of which any other person, firm or company shall become interested with him/her as a member of the of the company, nor do any act detrimental to the best interests of the company, or which would make it impossible to carry on the ordinary business of Supportive

Health LLC. Notwithstanding the above, any member, for estate and income tax planning purposes, may transfer his/her company interest to a revocable trust or family Partnership at any time.

## ARTICLE VII
### PREEXISTING LOANS

The company agrees to assume the existing mortgages or encumbrances, if any, on properties transferred to Supportive Health LLC.

## ARTICLE VIII
### CAPITAL ACCOUNTS

8.1 Capital accounts shall be maintained for each member. The capital interest of each member shall consist of his/her original contribution to capital, increased by (1) additional capital contributions and (2) any credit balances transferred to his/her capital account as provided herein, and decreased by (a) distributions in reduction of member capital and (b) his/her share of company losses.

8.2 Payments to individual members shall be made out of net income from time to time as determined by the members, and shall be distributed in accordance with the respective percentage interests of the members as shown by their respective capital accounts. It is understood and agreed that income shall be first used to pay obligations of the limited liability company, including salaries to members, managers and employees for service to the company, and to purchase necessary assets or property for the company.

8.3. From time to time the company may require additional capital. In such event an assessment for such additional requirements may be made by the members with the consent of each and every member.

8.3.1. All members shall be required to pay such assessments within ten (10) days after notice thereof. Should any member fail to pay the full assessment within said ten (10) days, interest shall thereafter accrue on the unpaid balance at the rate of one and one-half percent (1-1/2%) per month until paid.

8.3.2 Should any member fail to pay the full assessment within one hundred eighty (180) days after notice thereof, such member shall be automatically expelled, and the provisions of Section 16 shall apply.

8.4. Supportive Health LLC shall maintain adequate books and records at its principal office, and all members shall have the right to inspect said books at reasonable times during business hours. Individual capital accounts shall be kept for each member. The managing member(s) agree to deliver to each member within thirty (30) days after the expiration of each fiscal year of the company a statement showing the capital account of each member, the distribution to each member, the basis employed in stating the valuation of the assets and any changes is such basis during the preceding year; the amount of income or loss and the additions and deductions therefrom setting forth in particular the amounts of depreciation, amortization, interest, and extraordinary income or charges, whether or not included in operating income, and the amount thereof reportable for state of NJ and federal income tax purposes.

8.5. No member shall receive any interest on his/her contribution to the company, and any advance of money to the company by any member in excess of his/her respective agreed capital contribution shall not be deemed a capital contribution to the company, but a debt due from (name of limited liability company)and shall be repaid with interest at such times as may be determined by contract or by managing member(s) absent contractual time restraints, with interest at six percent 6% per annum.

8.6. The managing member(s) shall devote such time to the company as shall be necessary to conduct the day to day operation of company business. The managing member(s) shall

have full charge of the management thereof, subject to all member(s) exercising control over an aspect of company business in accordance with paragraph 10.1., and shall have the power on behalf of the company to perform such acts as are allowed by the laws of the state of NJ or county in which the company properties or assets are located, except where limited by this Agreement, including but not limited to, sale of company property and the execution of bills of sale, contracts of sale, conveyances, and deeds.

## ARTICLE IX
### DIVISION OF PROFITS AND LOSSES

The net profits or losses of the company shall be divided among the members in proportion to their adjusted capital accounts.

## ARTICLE X
### MANAGEMENT OF PARTNERSHIP: DUTIES AND RESTRICTIONS

10.1 Each member shall have an equal vote in the management of company business and a majority vote of the members in attendance to a properly called meeting shall control company business, except as otherwise provided by this agreement. A seven (7) day notice must be given before a meeting of the members can be called, unless otherwise agreed.

10.2 The members shall devote such time to the actual operation of the business as they shall form time to time agree and may be compensated by way of salaries or wages for the value of such services actually performed, the amount of such salaries or wages to be determined by unanimous agreement of the members. Such wages or salaries shall be treated as an expense in determining company net profit or loss.

10.3 One or more company bank accounts shall be established and checks on such accounts may be signed by any one of the members, or otherwise, as the members shall agree.

10.4 No member, without the consent of the other members, shall:

10.4.1 Borrow or lend money on behalf of the company.

10.4.2 Execute any security agreement, mortgage, bond, or lease.

10.4.3 Assign, transfer or pledge any debts due the company or release any such debts due, except upon payment in full.

10.4.4 Compromise any claim due the company, or         submit to arbitration any dispute or controversy involving the company.

10.4.5. Sell, assign, pledge, or mortgage his/her interest in the company.

## ARTICLE XI
### LOANS BY MEMBERS

Any one or more of the members may loan such sums to the company as shall be needed from time to time over and above contributed capital and funds borrowed from other sources. Such loans shall be for such periods of time as each and every one of the members shall agree and shall be evidenced in writing by notes bearing interest at prevailing commercial rates and showing times and amounts of repayment.

## ARTICLE XII
### COMPANY FUNDS

All funds of the company shall be deposited and kept in its name in such company bank account or accounts as shall be designated by the members. All withdrawals therefrom shall be made as provided in Section 10.3.

## ARTICLE XIII
### COMPANY ACCOUNTING

At the end of the company fiscal year, or as soon as practical thereafter, a full, true, and accurate account shall be made in writing of all the assets and liabilities of the company and of all of its receipts and disbursements, on the cash basis method of accounting, in accordance with generally accepted accounting principles. The assets, liabilities, and income, both gross and net, shall be ascertained and the net profits and net losses shall be determined. The account of each member shall thereupon be credited or debited, as the case may be, with his/her share of such net profits or losses. In preparing such account, there shall be charged all expenses of the business and also all losses, and other charges incident or necessary to the carrying on of the business. A copy of the state and federal income tax returns of the company will be distributed to all persons who were members during the year so that they may timely and properly file their respective tax returns.

## ARTICLE XIV
### WITHDRAWAL OF A MEMBER

14.1 Upon the withdrawal of a member for any reason other than expulsion, the remaining members may acquire the withdrawing member's company interest by paying to him/her or his/her legal representative an amount determined by the application of Article XV, said amount be paid as herein provided. In the event the remaining members elect not to purchase said interest within forty-five (45) days after the receipt of an offer, then the interest shall be offered to the company. If the company elects not to purchase said interest within thirty (30) days after the offer, then the company shall dissolve and the provisions of Article XVII shall apply.

14.2 If withdrawal occurs as the result of death or permanent disability as herein defined, payments made by the remaining members, or the company, shall be made to the withdrawing member, or his/her legal representative, in ten (10) equal semi- annual installments, including interest, with the first payment due on or before sixty (60) days after withdrawal for death or permanent disability. For purposes of this section, the term "permanent disability" shall mean such degree of physical or mental disability as is sufficient to render a member incapable of performing his/her duties as a member or in his/her regular occupation for a period of more than one (1) year. In the event that the company elects to purchase the deceased or disabled member's interest, and a portion of the decedent's or disabled's interest is covered by insurance, the full amount of the insurance, up to, but not exceeding, the purchase price shall be paid to the decedent's or disabled's legal representative within sixty (60) days after the date of death or disability.

14.3 If withdrawal occurs for any other reason, except expulsion, payment, whether made by the remaining members or the company, shall be made to the withdrawing member in sixteen (16) semi-annual installments, including interest, with the first payment due on or before sixty (60) days after withdrawal.

14.3.1 At the time the initial payment is made to the withdrawing member, or his/her legal representative, the company, or the remaining members, as the case may be, shall execute its/their promissory note, payable to the withdrawing member or his/her legal representative, in the face amount of the unpaid balance, and otherwise on the terms and conditions set forth above. The note shall provide for interest at the annual percentage rate equal to the federal prime rate of the month of initial payment on the unpaid balance, said interest to accrue from and after the initial payment.

14.3.2 The note shall provide for the privilege of prepayment of the whole amount or any installment thereunder without premium or penalty The note shall further provide that, at the option of the holder, the entire amount shall become due if all or any part of any principal or

interest payment shall remain unpaid for forty-five (45) days after the date on which the same becomes due by the terms of the note.

## ARTICLE XV
## VALUATION OF INTEREST OF THE WITHDRAWING MEMBER

15.1 If a member withdraws for any reason, including death or permanent disability, then the value of his/her interest in the company shall be the sum of the following:

(a) His/her proportionate share of the assets of the company, less his/her proportionate share of the liabilities of the company, all valued as hereinafter set forth; plus

(b) His/her proportionate share of the accrued net income of the company to the date of death or effective date of withdrawal; which shall be referred to as the book value or purchase price, and which shall be determined as hereinafter provided.

15.2 The book value or purchase price for a company interest, as set forth herein, shall be the book value thereof as it appears on the books and records of the company as of the close of business on the date of death or effective date of withdrawal, as adjusted by substituting the fair market value as of such date, in place of the book value, of any property and improvements owned by the company. Such adjusted book value shall be computed by the accountant regularly employed by the company in accordance with the accounting practices and procedures regularly followed by the company and in accordance with the generally accepted accounting principles and procedures.

15.2.1 No allowance shall be made for goodwill, trade name or other intangible assets, except as those assets have been reflected on the company books immediately prior to the date of the determination of book value.

15.2.2 Book value shall include and reflect the withdrawing member's capital account as of the end of the last fiscal year as shown on the company books, increased by his/her share of company profits and decreased by his/her share of company losses for the period from the beginning of the fiscal year in which he/she withdrew until the date of his/her withdrawal, and further increased by contributions and decreased by withdrawals during such period, all in accordance with Articles V and VIII.

15.2.3 In making the adjustment for the fair market value of the property, the accountant may rely on the written appraisal of any licensed real estate appraiser, selected by him/her for that purpose at the expense of the company.

15.2.4 A statement showing the book value or purchase price, as adjusted, and the supporting items and computations, including a copy of the property appraisal, shall be delivered to the withdrawing member or his/her legal representative and to the remaining members on or before sixty (60) days after the date of death or effective date of withdrawal. The book value or purchase price as set out in the statement shall be deemed to be the price for the entire company interest, binding upon all parties hereto, unless and until changed by written agreement of the parties or by arbitration as hereafter provided.

15.2.5 In the event the accountant is unable to complete the statement for any reason before the initial payment is due, as provided in Article XV, and the withdrawal is for any reason other than death or permanent disability, then an initial payment of five percent (5%) of the estimated purchase price, as determined by the accountant, shall be made. If the withdrawal is for death or permanent disability, then an initial payment of ten percent (10%) of the estimated purchase price, as determined by the accountant, shall be made. Thereafter and within sixty (60) days the statement shall be completed and any required adjustments on the unpaid balance shall be made on the basis for handling increases or decreases as set forth in Section 15.5.

15.3 Payments made by the company to any member who withdraws for any reason other than death or permanent disability, which are in excess of the said member's capital accounts at the effective date of withdrawal shall be considered as payments of income under

Section 736(a) of the Internal Revenue Code. Payments which reflect the capital account of such member shall be considered as payments for an interest in the company under Section 736(b) of the Code.

15.4 Payments made by the company to any member, or his/her legal representative, who withdraws because of death or permanent disability shall, to the extent that they represent payment of undrawn profits, be considered as payments of income under Section 736(a) of the Internal Revenue Code, and the balance of the payments made hereunder shall be considered as payments for an interest in the company under Section 736(b) of the Code.

15.5 In the event either the withdrawing member, or his/her legal representative, or a purchaser, or a majority of the remaining members, should dispute the purchase price shown on the accountant's statement prepared pursuant to Section 15.2.4, then such disputing party shall, within ten (10) days after the delivery of such statement, give a written notice of his, her or their objection to the other parties, which objection shall contain a specification of the reasons therefor. If the dispute is not thereafter settled within twenty (20) days by written agreement among the parties, then the determination of the book value or purchase price as of the date of death or effective date or withdrawal shall be accomplished by arbitration, as provided in Article XVII hereof. If the amount is changed by the agreement of the parties or by the arbitration award, the new amount shall govern and shall be the purchase price for the company interest hereunder. If the new amount is not fixed and determined until after the initial payment, then any increase in the price shall be paid in cash to the withdrawing member, or his/her legal representative, within sixty (60) days after the date of such agreement; and any decrease in the purchase price thus determined shall be credited against the unpaid balance owing the withdrawing member, or his/her legal representative, and shall reduce the principal amount due on the note referred to in Section 14.3.1.

## ARTICLE XVI
EXPULSION OF A MEMBER

16.1. A member may be expelled only by agreement of other members from the limited liability company for any of the following reasons:

16.1.1. Insolvency, bankruptcy or assignment of assets for the benefit of creditors.

16.1.2. Conviction of a felony.

16.2. To expel a member a vote must be conducted by which 2/3 or greater of the members vote in favor of expulsion.

16.3. If a member is expelled, he/she shall be paid the value of his/her interest, determined as provided in Article XIII, as follows:

16.3.1. Thirty-three and one-third percent (33 1/3%) thereof in cash, within ninety (90) days following the date of notice of expulsion to the affected member.

16.3.2. The balance paid in not more than three (3) annual installments, including interest, commencing one hundred eighty (180) days after the payment referred to in Section 16.3.1 and continuing thereafter on the anniversary of said payment until paid in full. Interest shall accrue on the unpaid balance at the annual rate of eighty percent (8%) from and after the payment referred to in Section 16.3.1, and shall be payable annually in addition to the principal payment.

16.4 At the time the payment referred to in Section 16.3.1 is made, the company shall execute its promissory note payable to the expelled member, in the face amount of the unpaid balance, and otherwise on the terms and conditions set forth above, and the provisions of Section 14.3.2 shall apply.

## ARTICLE XVII
## DISSOLUTION AND TERMINATION OF THE COMPANY

17.1 <u>Supportive Health LLC</u> shall dissolve upon the occurrence of any of the following events:

    17.1.1. Each and every member signs an agreement dissolving the company.

17.2. On termination or dissolution by agreement of the members, or for any other reason, the company shall immediately commence to wind up its affairs. The members shall continue to share profits and losses during the period of liquidation in the same proportions as before dissolution. The termination of the company shall be conducted by all the members, or remaining members. The proceeds from liquidation of company assets shall be applied as follows:

    17.2.1. Debts of the company, other than to members.

    17.2.2. Amounts owed to members for unpaid wages and salaries.

    17.2.3. Loans to members.

    17.2.4. The capital contributions of the members as reflected in their respecting capital accounts.

17.3. Any gain or loss on disposition of company properties in the process of liquidation shall be credited or charged to the members in the proportion of their interest in profits or losses. Any property distributed in kind in liquidation shall be valued and treated as though the property were sold at its fair market value and the cash proceeds were distributed. The difference between the value of the property distributed in kind and its book values shall be treated as a gain or loss on sale of the property and shall be credited or charged to the members in the proportions of their interests in profits or losses as specified herein.

17.4. In connection with the liquidation the members shall decide whether to sell any company assets, and if so, whether at public or private sale, and for what amount and upon what terms, or whether to distribute and transfer the same to the members in kind.

17.5. In the event that the members, by majority vote, determine to sell any real or personal property, they shall have full right and discretion to determine the time and the manner in which such sale shall be had, having due regard for the activity and condition of market conditions, and general financial and economic conditions. The sale may be either public or private.

## ARTICLE XVIII
ARBITRATION

18.1. Any controversy or claim arising out of or relating to this agreement, or to the interpretation, breach, or enforcement thereof, shall be submitted to arbitration and settled thereby. Any award made by such arbitration shall be final, binding, and conclusive on all parties hereto for all purposes, and judgment may be entered thereon in any court having jurisdiction thereof.

18.2. The fees and expenses of arbitration shall be borne equally by the parties. If a majority of the members believe that expert advice will materially assist the arbitrator in the resolution of any questions, the members may retain one or more qualified persons, including, but not limited to, legal counsel, architects, accountants, engineers, appraisers, Realtors, or insurance adjusters, to provide expert advice. The fees and expenses of any such qualified person or person shall also be borne equally by the parties. The arbitrators shall have no power to alter, amend, or modify any provision of this agreement.

18.3. All arbitration proceedings shall be conducted in accordance with and in compliance with the rules then complied with by the American Arbitration Association, insofar as practicable, or, in the event that such rules are no longer in existence, then in accordance and in compliance with such rules, regulations, or statutes as govern procedures in court of record in the State of NJ in civil matters. The arbitrator, however, may modify any such rules to the extent that

such modification will assist the arbitrator in reaching a fair determination or to the extent that the arbitrator may determine that strict adherence to said rules is not necessary to reach such fair and impartial determination.

## ARTICLE XIX
### NOTICE

Wherever provision is made in this agreement for the giving or delivery of any notice, statement, or any instrument, such notice shall be deemed to have been duly given and delivered if personally delivered or mailed by United States registered or certified mail, addressed to the party entitled to receive the same at his/her address. Each party hereto may change his/her mailing address by giving to the company, by personal delivery or by United States registered or certified mail, written notice of election to change such address and of such new address. Except where otherwise specified in this agreement, any notice, statement, or other instrument shall be deemed to have been given, served, and delivered on the date on which such notice was personally delivered or mailed as herein provided.

## ARTICLE XX
### OUTSIDE INTERESTS

20.1. Each member may have or engage in other lawful business interests or ventures independently or with others, and neither the company nor any other member shall have any right by virtue of this agreement in or to any such independent ventures.

20.2. No member shall be required to devote his entire time to the business of the company. No member shall be obligated to devote more time and attention to the conduct of the business of the company than shall be deemed, by a majority of the members, including such member, to be required for the business of the company.

## ARTICLE XXI
### AMENDING THE OPERATING AGREEMENT

At any meeting properly called by the members, giving seven (7) days notice to all members in accordance with paragraph 10.1., a motion may be made to amend this Operating Agreement or the Articles of Organization. The Operating Agreement and the Articles of Organization may be amended in writing, in whole or in part, by a vote of each and every member of the company.

## ARTICLE XXII
### ENTIRE AGREEMENT

This agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof. Any and all prior discussions, negotiations, commitments, and understandings relating thereto are hereby merged herein. This agreement cannot be changed or terminated orally.

## ARTICLE XXIII
### COVENANTS AND AGREEMENTS

The covenants and agreements herein contained shall inure to the benefit of and be binding upon the parties hereto and their respective executors, administrators and assigns.

## ARTICLE XXIV
### DEFINITIONS OF TERMS

Words herein used in the singular shall denote the plural and the plural shall denote the singular, and the context so requires. Nouns and pronouns used herein, whether masculine, feminine or neuter, shall be interpreted as the context requires.

## ARTICLE XXV
### GOVERNING LAW

This agreement, and the application and/or interpretation thereof, shall be governed exclusively by the laws of the State of NJ, notwithstanding the place where this Agreement may be executed by any other party.

## ARTICLE XXVI
### INVALID PROVISIONS

In the event that any provisions of this Operating Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this agreement.

## ARTICLE XXVII
### COUNTERPARTS

This agreement may be executed in any number of counterparts with the same effect as if all parties hereto had all signed the same document. All counterparts shall be construed together and shall constitute one agreement.

IN WITNESS WHEREOF, the parties have signed this Operating Agreement the day and year first above written, to be effective.

_Rod Sanders_
Print
MEMBER Title: **President**

_RodSanders_
Sign