| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N. J. LBR 9004-2 (c)**<br><br>**BECKER LLC**<br>354 Eisenhower Parkway<br>Plaza Two, Suite 1500<br>Livingston, New Jersey 07039<br>(973) 422-1100<br>Attorney for Chapter 7 Trustee, Eric R. Perkins<br>Justin S. Baumgartner, Esq.<br>Email: jbaumgartner@becker.legal | |
| In re:<br><br>Supportive Health LLC,<br><br>Debtor. | Case No. 21-15113-VFP<br><br>Chapter 7<br><br>Judge: Hon. Vincent F. Papalia<br><br>Hearing Date: |

**APPLICATION IN SUPPORT OF TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING CHAPTER 7 TRUSTEE TO SELL THE DEBTOR'S RESIDENTIAL REAL PROPERTY LOCATED AT 2229 E. EDEN PLACE, ST. FRANCIS, WISCONSIN FREE AND CLEAR OF ANY LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(b) and (f); (2) AUTHORIZING PAYMENT OF REAL ESTATE BROKERS' COMMISSION FROM THE SALE PROCEEDS; (3) WAIVING THE STAY PURSUANT TO FED. R. BANKR. P. 6004(h); AND (4) FOR OTHER RELATED RELIEF**

Eric R. Perkins, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Supportive Health LLC (the "Debtor"), hereby applies to this Court for entry of an Order (1) Authorizing Chapter 7 Trustee to Sell the Debtor's Residential Real Property Located at 2229 E. Eden Place, St. Francis, Wisconsin 53235 Free and Clear of any Liens, Claims, and Encumbrances pursuant to 11 U.S.C. § 363(b) and (f); (2) Authorizing Payment of Real Estate Brokers' Commission from the Sale Proceeds; (3) Waiving the Stay Pursuant to Fed. R. Bankr.

P. 6004(h); and (4) for other related relief (the "Sale Motion") and in support thereof, respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Through the Sale Motion, the Trustee seeks authority to sell the Debtor's real property located at 2229 E. Eden Place, St. Francis, Wisconsin 53235 (the "Property") to Milwaukee Property Buyers, LLC (the "Purchaser") for the sum of $105,000.00 via a private sale.

2. The Property has been privately marketed by the Trustee's relator, Root River Realty, since July of 2022. Specifically, Root River Realty has marketed the Property to its network of private real estate investors as well as other local real estate brokers. The Trustee made the decision to privately market the Property after the he was made aware that the Property's foundation is in need of substantial repair work and any purchaser would not be able to obtain a certificate of occupancy without the foundation issues being remedied. After approximately four months of marketing, two parties made offers for the Property with the Purchaser ultimately submitting the highest and best offer. Accordingly, the Trustee has concluded in his reasonable business judgment that the sale of the Property to the Purchaser for the purchase price of $105,000.00 is in good faith and for fair value.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N), and (O).

4. Venue of the Debtor's Chapter 7 case and this Motion is in the proper court pursuant to 28 U.S.C. § 1408.

5. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 363(b) and (f) as well as Rules 2002(a), (c), and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## PROCEDURAL HISTORY

6. On June 22, 2021 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") (ECF No. 1).

7. On August 11, 2021, the Office of the United States Trustee (the "UST") filed a Motion to Convert the Debtor's Case to Chapter 7 based on, among other things, non-debtor party Jean Paul Perrault, filing unauthorized and potentially fraudulent pleadings on behalf on the Debtor, thereby compromising the integrity of the Court's docket (ECF Nos. 22, 27).

8. On August 19, 2021, the Court entered an Order granting the UST's Motion to convert the Debtor's case to Chapter 7 (ECF No. 34).

9. Thereafter, on August 19, 2021, the UST appointed the Trustee to administer Debtor's Estate pursuant to Bankruptcy Code § 701 (ECF No. 35).

## FACTUAL BACKGROUND

10. Among the assets listed on the Debtor's Schedule A/B is a 100% interest in the Property (ECF No. 10 at p. 7 of 38).

11. The Property is the only real property listed on the Debtor's Schedule A/B.

12. As stated in the Certification of Francyne D. Arendas, Bankruptcy Auditor, in support of the UST's Motion to Convert the Debtor's case to Chapter 7, a public records search of the Property shows that the Property was purchased on December 7, 2012 by Jean Paul

Perrault and on February 17, 2016, Jean Paul Perrault transferred the Property via quitclaim deed to the Debtor (ECF No. 22-1 at ¶ 15). This quitclaim deed is attached hereto as **Exhibit A**.

13. The Property is listed on the Debtor's Schedule A/B as having a current market value of $ 182,000.00 (ECF No. 10 at p. 7 of 37). However, this value does not account for the substantial repair work needed to repair the Property's foundation or the overall poor condition of the interior of the home. A report from Gaidish Foundation Company detailing the work that needs to be performed to repair the foundation damage is attached hereto as **Exhibit B**.

14. According to the Debtor's Schedule D as well as a title report obtained by the Trustee, there are no mortgages or other security interests on the Property.

15. According to the Debtor's Summary of Assets and Liabilities and Schedule E/F, the Debtor has pre-petition general unsecured debts in the amount of $120,000.00 predominately consisting of debt owed to creditor The City of Milwaukee, Wisconsin (ECF No. 10 at p. 1, 15 of 38).

16. On January 7, 2022, The City of Milwaukee filed a general unsecured claim in the amount of $76,238.56 (Proof of Claim No. 3-1).

17. On October 13, 2021, the Trustee conducted a site visit at the Property. During this visit, the Trustee discovered that the Property was being rented and occupied by Patrick Newbury and Jennifer Newbury (collectively the "Occupants") pursuant to a twelve (12) month residential lease, which commenced on March 1, 2021. This lease expired on February 28, 2022 (the "Lease Agreement").

18. The Trustee has asserted that the Lease Agreement is void *ab initio* because the Lease Agreement was between Jean Paul Perrault and the Occupants and the Debtor, as the

owner of the Property, was not a party to the agreement. Thus, Jean Paul Perrault had no legal authority to enter into the Lease Agreement.

19. On October 29, 2021, the Trustee sent notice to Mr. Newbury advising him that as the Chapter 7 Trustee of the Debtor's Estate all rents should be remitted to him and not Jean Paul Perrault.

20. In response to this notice, Mr. Newbury advised that he was willing send all future rents to the Trustee, but requested an Order from this Court authorizing the Trustee to collect such rents in order to protect himself and Ms. Newbury from Jean Paul Perrault filing an eviction action against them in Wisconsin for the non-payment of rents.

21. On November 9, 2021, the Trustee filed a Motion for Entry of an Order Deeming Rents Property of the Bankruptcy Estate and Compelling the Turnover of all Rents Held by Occupants and Jean Paul Perrault to the Chapter 7 Trustee (the "Rent Turnover Motion," ECF No. 56).

22. On November 16, 2021, the Debtor's principal, Carline Bolivar (Ms. Bolivar") filed an objection to the Rent Turnover Motion (ECF No. 59).

23. On December 8, 2021, the Court entered an Order granting the Rent Turnover Motion (the "Rent Turnover Order") which provided, among other things, that the Property as well as all post-petition rents generated from the Property were property of the Estate.[1] To date, Jean Paul Perrault has failed to respond to any Order of this Court, including the Rent Turnover Order.

---

[1] On December 14, 2021, Ms. Bolivar filed a Motion to Reconsider the Rent Turnover Order (ECF No. 92). This Motion was denied by the Court on January 25, 2022 (ECF No. 130). Additionally, it should be noted that while Ms. Bolivar did not appeal either the Rent Turnover Order or the Order denying her Motion to Reconsider said Order, to date, each and every one of Ms. Bolivar's appeals of this Court's orders has been dismissed by the District Court. *See* ECF Nos. 177, 185, 186, 187, 188.

24. As of the date of this filing, the Occupants and the Trustee have agreed that the Occupants may continue to reside at the Property while it was being marketed for sale under a use and occupancy agreement as authorized by the Court in the Rent Turnover Order.

25. Moreover, the Purchaser is purchasing the house with knowledge of and subject to the Occupants' use and occupancy of the Property. As such, the Trustee is not seeking an order evicting the Occupants from the Property.

## **TRUSTEE'S EFFORTS TO MARKET AND SELL THE PROPERTY**

26. On October 18, 2021, the Trustee, through counsel, filed an Application for Retention of The Cream City Real Estate Company ("Cream City") to serve as the realtor for the Estate (ECF No. 49).

27. On October 26, 2021, the Court entered an Order granting the Trustee's Application to retain Cream City (ECF No. 50).

28. As disclosed in the Application for Retention of Cream City, the arrangement for compensation between Cream City and the Trustee provided that in the event the Trustee terminated Cream City's listing of the Property prior to the sale of same, Cream City would be entitled to a fee of $1,000.00. *See* ECF No. 49 at ¶ 6.

29. On or about April 11, 2022, the Trustee, in consultation with Cream City, decided that he should terminate the Estate's relationship with Cream City and retain a realtor more familiar with real estate sales involving a bankruptcy proceeding.

30. On May 25, 2022, upon the recommendation of Cream City, the Trustee, through counsel, filed an Application for Retention of Root River Realty to serve as the realtor for the Estate (ECF No. 189).

31. On June 9, 2022, the Court entered an Order granting the Trustee's Application to retain Root River Realty (ECF No. 191).

32. Root River Realty (the "Realtor") marketed the Property to its network of private real estate investors and other local real estate brokers starting in July of 2022.

33. At the time it began marketing the Property, the Realtor estimated the Property in its current condition had a value of $100,000.00.

34. As of this filing, two different parties have made offers on the Property with the first offer from King James Investments LLC being received on September 1, 2022 in the amount of $65,000.00.

35. The Purchaser submitted its offer to the Trustee on October 11, 2022 in the amount of $105,000.00. This is an all cash offer with no financing contingency. As stated more fully below, the Trustee believes in his reasonable business judgment that the Purchaser's offer constitutes the highest and best offer for the Property.

36. As stated above, the Property is currently in poor overall condition and is in need of major repairs to its foundation. As such, almost all the value of the Property is in the land.

37. The Trustee asserts that a private sale of the Property to the Purchaser is in the best interests of the Estate as the sale will bring funds into the Estate while removing the carrying costs of the Property.

38. Notwithstanding this determination, the Trustee, as mandated by the Bankruptcy Code, welcomes and will consider all subsequent offers for the Property which in the Trustee's and/or Court's business judgment would constitute higher and better offers. In this vein, the Trustee respectfully requests that any subsequent competing bidders with the ability to (1) immediately remit a 10% deposit of their offer amount to the Trustee; and (2) provide proof of

funds evidencing its ability to close on the sale submit a competing bid to the Trustee for his consideration no later than forty-eight (48) hours prior to the sale hearing. Notice of this Motion will also be provided to counsel for the initial bidder King James Investments LLC in the event it wishes to submit another offer.

## TERMS OF THE SALE AGREEMENT

39. On October 12, 2022, the Purchaser and the Trustee executed an Agreement of Sale for the Property (the "Agreement"), a true and accurate copy of which is attached hereto as **Exhibit C**. The Agreement provides that the Purchaser shall purchase the Property for $105,000.00 (the "Purchase Price") pursuant to the terms and conditions set forth in the Agreement, and subject to the approval of this Court.

40. The pertinent terms of the Agreement are as follows:[2]

   a. The purchase price shall be $105,000.00.

   b. A payment in the amount of $10,500.00 (the "Deposit") shall be deposited with the Trustee and held in escrow in a non-interest bearing account within ten (10) days of the Agreement.

   c. The balance of the Purchase Price shall be paid to the Trustee at closing by wire transfer or by certified, cashier's, or bank check.

   d. At Closing, the Trustee shall deliver to the Purchaser a Trustee's Deed, and any other instruments reasonably required by Purchaser or Purchaser's title insurance company; and Purchaser shall deliver to Trustee such documents or instruments as may be reasonably required to effectuate the Property's sale.

---

[2] References to the Agreement are qualified in their entirety by the Agreement itself and to the extent that there is any discrepancy between the descriptions of the sale contained herein and in the Agreement, the Agreement shall control. Capitalized terms not defined herein shall have the meanings ascribed to them in the Agreement.

e. Although the Trustee does not assume the risk for any material loss or damage to the Property; if prior to closing all or a substantial part of the Property suffers a material loss or damage due to fire or casualty or if all or part of the Property is condemned or taken as a result of eminent domain the Purchaser may terminate the Agreement without further obligation and the subject deposit shall be returned to the Purchaser.

f. The sale is subject to the occupancy by Patrick Newberry and his family, and Mr. Newberry and his family's personal possessions are not included in the sale.

g. An order of this Court approving the sale of the Property must be issued prior to the Closing (the "Approval Order"). The Approval Order shall not be subject to any stay under Bankruptcy Rule 6004(h). In the event that an Approval Order or certificate of no objection is not issued within sixty (60) days of the date of the Agreement, either the Purchaser or the Trustee may terminate the Agreement by providing written notice to the other party and the Purchaser's deposit shall be returned.

h. The sale is "where is" and "as is," and free of liens and encumbrances, with valid liens and encumbrances to attach to the proceeds of the sale.

i. The Trustee is solely liable for any payment owed to the real estate broker he engaged in regard to the Property and Purchaser agrees to indemnify Trustee against and hold harmless from any loss, damage, cost or expense, including without limitation, attorneys' fees and disbursements, incurred as a result of any misrepresentation made by Purchaser.

j. The Closing shall take place within fourteen (14) days following the entry of the Approval Order or, at some other commercially reasonably time as agreed upon by Trustee and Purchaser.

k. The laws of the State of New Jersey shall govern the interpretation, construction, and performance of the Agreement.

l. The Bankruptcy Court shall retain jurisdiction over any action relating to this Agreement.

m. In the event of a default by the Purchaser, the Trustee shall have the right to avail himself of all rights and remedies available at law or in equity, including but not limited to retention of the Deposit.

n. In the event of a default by the Trustee, the Purchaser, as its sole and exclusive remedy, shall be entitled to the return of the Deposit, and thereafter neither party shall have any further obligation to the other.

o. The sale of the Property is subject to higher and better offers as determined by the Trustee or the Bankruptcy Court.

p. In the event, the Purchaser is not selected as the ultimate purchaser of the Property and the Trustee instead accepts a competing offer and said competing offer is approved by an order of the Bankruptcy Court and subsequently closes, Purchaser shall be paid a break-up fee constituting any expenses actually incurred from the date of the Agreement until the Trustee notifies Purchaser that he has accepted a higher and better offer (the "Break-Up Fee").

q. In order to receive the Break-Up Fee, Purchaser must file an application with the Bankruptcy Court specifically listing each expense actually incurred in

contemplation of the Agreement and seeking an order of the Bankruptcy Court approving said expenses (the "Break-Up Fee Application").

### IV. RELEVANT TERMS OF THE LISTING AGREEMENT

41. On or about June 9, 2022, the Trustee and the Realtor, by and through sales broker Holly Speranza, executed a Listing Agreement for the Property (the "Listing Agreement"), a true and accurate copy of which is attached hereto as **Exhibit D**. The Listing Agreement provides that the Realtor will be entitled to a 6.0% commission upon closing of the Property with 2.0% going to the Purchaser's agent, if any, and the remaining 4.0% being retained by the Realtor.

42. As such, upon the closing of the sale of the Property for $105,000.00, Realtor will become entitled to a commission of $6,300.00 with $2,100.00 of that amount going to Purchaser's agent if applicable.

43. The Trustee respectfully requests that he be authorized to pay the Realtor its full commission out of the Estate's portion of the sale proceeds.

44. Moreover, the Trustee further requests that he be authorized to pay Cream City $1,000.00 from the sale proceeds for its marketing efforts as agreed by the Trustee and Cream City in their listing agreement and as disclosed in the Trustee's Application for Retention of Cream City.

45. The Trustee's counsel will submit a separate application for legal fees in connection with the sale, in addition to the legal work it has performed on behalf of the Trustee to date.

## THE TRUSTEE SHOULD BE AUTHORIZED TO SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO SECTION 363(b) AND (f)

46. A trustee may sell property of an estate pursuant to 11 U.S.C. § 363(b)(1), which provides that "[t]he Trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Additionally, Bankruptcy Code § 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

47. Although the Bankruptcy Code gives no guidance regarding circumstances under which a sale of assets can be approved (other than the requirement to provide notice and a hearing), the United States Court of Appeals for the Third Circuit, in the seminal case of *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986), interpreted § 363(b) to require a finding by the Bankruptcy Court that the purchaser of a debtor's assets is a good faith buyer. The Third Circuit construed the "good faith buyer" standard to mean one who purchases in "good faith" and for "value." *Abbotts Dairies,* 788 F.2d at 147.

48. The *Abbotts Dairies* court compared a § 363(b) purchaser to a buyer at a judicial sale:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to take grossly unfair advantage of other bidders.

*Abbotts Dairies*, 788 F.2d at 147 (quoting *In re Rock Industries Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978).

49. The Third Circuit has adopted the "sound business purpose" test when examining the reason for an asset sale first articulated in *Official Committee of Unsecured Creditors v.*

*Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *see In re Indus. Valley Ref. & Air Cond. Supplies, Inc.*, 77 B.R. 15, 20 (Bankr. E.D. Pa. 1987).

50. In *Lionel*, the Second Circuit held that:

> There must be some articulated business justification . . . for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under [s]ection 363(b) . . . The rule we adopt requires that a judge determining a [section] 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.

*Lionel*, 722 F.2d at 1070-71.

51. The proposed sale of the Property meets the Third Circuit's requirement for a sale of assets out of the ordinary course of business.

52. A sound business reason exists because the sale appears to be the Debtor's only significant asset which is unencumbered by a mortgage or other security interest and one of the only sources for a potential distribution to unsecured creditors.

53. The proposed sale requires that the Property be sold to the successful bidder free and clear of all liens, claims, encumbrances and other interests. The Bankruptcy Code recognizes that courts may allow the sale of assets free and clear of such liabilities.

54. Pursuant to § 363(f), a Debtor's property may be sold free and clear of any and all liens, claims or interests in such property if (1) such a sale is permitted under applicable non-bankruptcy law, (2) the party asserting such a lien, claim or interest consents to such sale, (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (4) the interest is the subject of a bona fide dispute, or (5) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343,

345 (E.D. Pa. 1988) ("[s]ection 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is met").

55. A sale free and clear of liens, claims, interests and encumbrances is necessary to maximize the value of the Property. A sale subject to liens, claims, interests and encumbrances would likely result in a lower purchase price and result in substantially less of a benefit to the Debtor's Estate.

56. Any putative holders of interests against the Property can be compelled to accept a money satisfaction of such interests in legal or equitable proceedings in accordance with § 363(f)(5) of the Bankruptcy Code, so the standard for a sale free and clear of liens is satisfied here.

57. The Trustee also reserves his right to seek to recover out of any payment to any potential *ad valorem* taxing authority, the reasonable necessary costs and expenses of disposing of the Property under § 506(c) of the Bankruptcy Code.

58. The Debtor's schedules and the Trustee's title report indicate that there are no mortgages or security interest asserted against the Property. Notwithstanding, in the event there are any liens that have or may be asserted against the Property, to the extent they are valid and enforceable liens, they will be satisfied from the proceeds of the sale. Any liens, claims, interests and encumbrances may attach to the proceeds of the sale in the order of their priority, with the same validity, force and effect that they now have as against the Debtor's assets, subject to the rights, claims, defenses and objections, of the Trustee and all interested parties with respect to such liens and claims, all of which are expressly reserved.

59. Based on the foregoing, the Trustee submits that the proposed sale is in the best interest of the Debtor's Estate as it will enable the Trustee to make a distribution to the Debtor's unsecured creditors.

60. The Trustee further submits that the contemplated sale meets the requirements of § 363(f) and therefore should be free and clear of any and all liens, claims, interests, and encumbrances with any liens attaching to the proceeds of the sale subject to the Trustee's rights under § 506(c).

## WAIVER OF 14 DAY STAY

61. Pursuant to Federal Rule of Bankruptcy Procedure 6004(h), unless the Court orders otherwise, orders authorizing the sale of the assets pursuant to § 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.

62. The fourteen day period may be eliminated to allow a sale or transaction to close immediately. The Trustee asserts that given the goal to liquidate assets and bring this case to conclusion in the short term, there is cause to waive the stay and the Trustee requests that upon approval of the sale, the fourteen (14) day stay period pursuant to Rule 6004(h) be waived by the Court.

## NOTICE

63. Notice of this Application is being provided to: (1) The Office of the United States Trustee; (2) the Debtor; (3) Jean Paul Perrault, the former owner of the Property; (4) Carline Bolivar, the Debtor's principal; (5) Patrick and Jennifer Newbury, the current occupants of the Property; (6) The City of Milwaukee, creditor; (7) J. Nicole Knox, Esq., counsel to initial

bidder King James Investments LLC; and (8) any other interested parties as determined by the Trustee or the Court upon ruling on the Trustee's Application to Shorten Time filed concurrently with the Sale Motion.

## CONCLUSION

64. For all of the foregoing reasons, the Trustee respectfully requests that this Court enter the accompanying Order (1) Authorizing Chapter 7 Trustee to Sell the Debtor's Residential Real Property Located at 2229 E. Eden Place, St. Francis, Wisconsin 53235 Free and Clear of any Liens, Claims, and Encumbrances pursuant to 11 U.S.C. § 363(b) and (f); (2) Authorizing Payment of Real Estate Brokers' Commission from the Sale Proceeds; (3) Waiving the Stay Pursuant to Fed. R. Bankr. P. 6004(h); and (4) for other related relief.

          **BECKER LLC**
          Counsel to Eric R. Perkins, Chapter 7 Trustee

By: */s/ Justin Baumgartner, Esq.*
     Justin Baumgartner, Esq.

Dated: October 17, 2022